IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 5:12-CV-212-BO

| | |
|---|---|
| COLONEL HOSEA M. RAY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| THOMAS VILSACK, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on the parties' cross motions for summary judgment [DE 63 and 64] and plaintiffs' motion for leave to file surreply [DE 70]. A hearing was held on these matters on July 21, 2014 in Elizabeth City, North Carolina at 2:00 p.m. For the reasons stated herein, plaintiffs' motion for summary judgment is DENIED, defendants' motion for summary judgment is GRANTED, and plaintiffs' motion for leave to file is DENIED AS MOOT.

## BACKGROUND

On April 19, 2012, plaintiffs filed a complaint challenging the defendants' decision to issue Animal Welfare Act ("AWA") licenses to roadside zoo and animal dealer Jambbas Ranch Tours, Inc. ("Jambbas") in contravention of the AWA 7 U.S.C. § 2133. Plaintiffs contend that because Jambbas could not demonstrate that it was in compliance with the AWA before defendant renewed Jambbas's license that the agency's licensing decision was not in accordance with the plain language of the AWA and therefore must be set aside under the Administrative Procedure Act ("APA") 5 U.S.C. 706(2)(A). On July 23, 2012, plaintiffs filed a first amended complaint. On July 25, 2012, defendants filed a motion to dismiss. On January 22, 2013, the

Court denied the motion to dismiss. Defendants filed the administrative record ("AR")[1] on March 15, 2013 and supplemented the record on March 29 and April 12, 2013. On October 8, 2013, the Court ordered the defendants to supplement the AR and allowed plaintiffs to file a supplemental complaint against all defendants. On January 7, 2014, a consent decision was filed in defendants' administrative enforcement proceeding against Jambbas. [*See* DE 74]. The consent decision suspended Jambbas's license for a period of four months and continuing thereafter until Jambbas can demonstrate that it is in compliance with the AWA and the United States Department of Agriculture ("USDA") regulations and standards. As of July 18, 2014, Jambbas had not requested the USDA to perform the required inspection to demonstrate compliance and therefore its license was still suspended as of that date.

## DISCUSSION

I.  CROSS MOTIONS FOR SUMMARY JUDGMENT.

A. Standing

In order to establish Article III standing, a plaintiff must show "(1) it has suffered an injury in fact; (2) there exists a causal connection between the injury and conduct complained of; and (3) a favorable judicial ruling will likely redress the injury." *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 268 (4th Cir. 2011) (quotation omitted).

Defendants challenge only the redressability prong of the standing requirements. As this Court earlier held, "[i]t suffices for redressability purposes that a favorable ruling will result in the plaintiffs' injuries 'hav[ing] less probability of occurring." [DE 52 at 4] (quoting *Pye v. United States*, 269 F.3d 459, 471 (4th Cir. 2001)). Plaintiffs have sufficiently established that their injuries are likely to be redressed by a favorable ruling as the animals would be less likely

---

[1] The Administrative Record is found on the electronic docket under separate case number 5:13-MC-76-BO.

2

to be treated in a manner that is in violation of the AWA. Accordingly, they have standing as of the time this suit was initiated.

B. Mootness.

Article III of the United States Constitution limits federal court jurisdiction to actual "cases" and "controversies" and requires that a dispute remains "live" and that litigants maintain a "personal stake" in the outcome throughout the course of litigation. *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 395–96 (1980). "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* at 397 (quotation omitted). It is well-settled that "[i]f full relief is accorded by another tribunal – whether judicial administrative, arbitral, or a combination – a proceeding seeking the same relief is moot. Mootness also results if another tribunal affords relief greater than that sought in the pending action." 13B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3533.2.1 (3d ed. 2013) (collecting cases).

    i.    The matter before the Court is moot.

Defendants raise the issue of mootness in their motion for summary judgment. Colonel Ray and Rikki Harrison, both named plaintiffs in this case, were also parties to a state court action which concluded in August 2012 with a permanent injunction by consent directing the transfer of owenership and possession of "Ben the Bear" from Jambbas to the Performing Animal Welfare Society. [AR 49–71]. Concerns about "Ben the Bear" were a centerpiece of the plaintiffs' allegations of standing and injury in fact, and the state judgment they obtained moots that aspect of their claim.

The government also argues that the administrative action brought by the USDA against Jambbas moots the remainder of plaintiffs' claims. Jambbas and the USDA entered into a

3

consent order in this action and, although plaintiffs were not a party to the action, the defendants argue that this consent order, obtained through the USDA's enforcement powers, accomplishes more than any relief plaintiffs could obtain through a favorable judgment in this case. The consent order suspends Jambbas's license for a period of at least four months "and continuing thereafter until [Jambbas] can demonstrate to [USDA's Animal and Plant Health Inspection Service ("APHIS")] that it is in compliance with the [AWA], regulations and standards." [DE 65-1 at ¶ 5].

The consent order effectively provides the same relief plaintiffs would obtain by the non-renewal of Jambbas's license. Jambbas will not be able to operate as a dealer or exhibitor for the entire duration of the license suspension, the same as if the license were not renewed. *See* 9 C.F.R. § 2.10(c). Further, the license suspension will not be lifted until at least four months have passed and Jambbas thereafter passes an inspection demonstrating full compliance with the AWA. [DE 65-1]. Even assuming that Jambbas's license were not to be renewed, Jambbas would have to meet this same demonstration of compliance in order to obtain reinstatement of its license, *see* 9 C.F.R. § 2.3(b), but there would be no requirement that it wait four months or any set period of time before applying for reinstatement. *See* 9 C.F.R. § 2.5(c).

Additionally, the consent order provides much more relief that plaintiffs would be able to obtain from this Court. The consent order affirmatively requires that Jambbas cease and desist from further violations of the AWA, including without limitation (i) failing to maintain an adequate program of veterinary care; (ii) failing to remove excreta from animal enclosures and sanitize the rabbit cages at least once every 30 days; (iii) failing to keep clean and sanitized food and water receptacles; and (iv) failing to provide shelter adequate to environmental conditions or to maintain its facilities in good repair. [DE 65-1 at ¶ 1]. The consent order also levies monetary

4

penalties and imposes suspended penalties that could be owed if Jambbas is found to have violated the regulations at any time within the next two years including additional civil penalties under 7 U.S.C. § 2149(c) for knowingly disobeying the consent decision's cease and desist order. Finally, the consent order prohibits Jambbas from owning or acquiring any inherently dangerous animals or primates, or from exhibiting more than 30 animals of any other species at any given time. [DE 65-1 at ¶ 2–3]. Thus Jambbas has had to divest itself of many of the animal species that plaintiffs would like to see relocated to a better environment and reduce its animal inventory to a more manageable level that should positively correspond to an increase in the level of care provided to the remaining animals.[2] Jambbas is also no longer in possession of the more exotic and difficult to keep species listed in plaintiffs' complaint, including bear, alligator, raccoon, fox, elk, and pheasant.[3]

In response to defendants' argument that this matter is now moot, plaintiffs argue that defendants have not met their "heavy burden" to persuade the Court that the "challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), INC.*, 528 U.S. 167, 189 (2000) (citation omitted). Plaintiffs contend that the voluntary conduct of the defendants by entering into a consent order in their administrative action against Jambbas cannot moot the claims before this Court because defendants have not and cannot show that the challenged conduct cannot "reasonably be expected to recur." *Id.*

Plaintiffs are correct that the USDA intends to continue its policy of rubberstamping AWA license renewal applications. However, the connection between all of the steps Jambbas must take before reactivation of its license is too tenuous to conclude that the USDA will, in the

---

[2] In May 2011, Jambbas had 138 animals in its inventory, as of February 2014, Jambass had reduced its inventory to 76 animals. [DE 65-2].
[3] Jambbas's animal inventory as of February 2014 consisted of 23 goats, 18 sheep, 11 cows, 6 bison, 6 rabbits, 5 dogs, 2 blackbuck, 2 deer, 2 pigs, and 1 cavy. [DE 65-2].

5

future, rubberstamp Jambbas's license renewal despite its being in violation of the AWA, and regulations and standards.

First, plaintiffs' assertion relies on the presumption that Jambbas will apply to have its license restored and will successfully demonstrate the compliance necessary to reactivate its license. Jambbas is a third-party to this suit and has its own decisions to make regarding the expense of compliance, the risk it takes in the chance of increased penalties should it later fail to comply, and its normal business operation decisions that will impact whether or not it seeks to reactivate its license. Although plaintiffs suggest that Jambbas's past revenue streams practically ensure that it will attempt to have its license reinstated, the Court is not convinced. Indeed, Jambbas has allowed two months to pass after the expiration of its four month suspension under the consent order without attempting to have APHIS perform the prerequisite inspection in order to reactivate its license. [DE 74]. Ostensibly a four month time period would have allowed Jambbas to make the necessary corrections in order to pass an inspection and reactivate its license. Thus it is not clear that Jambbas will ever reapply for its license, and, if it fails to apply for reinstatement, the possibility of the USDA rubberstamping Jambbas's renewal application in the future is eliminated.[4]

Second, even if Jambbas were to get its license reinstated, it now has significant financial incentive to comply with the AWA, and the USDA's regulations and standards. Third, by prohibiting Jambbas from obtaining some of the more difficult animal species to care for, the consent order further reduces the likelihood that Jambbas will fail to comply in the future.

---

[4] Although offered in the context of standing, the Supreme Court's discussion of standing when plaintiffs challenge the legality of the governments regulation or lack of regulation of someone else in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992), is instructive. In such a circumstance, as here, "[t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict." *Id.* at 562. Although it might have been reasonable to assume that absent the consent order, Jambbas would have continued to operate and apply for license renewals, the consent order has disrupted the calculus here as to render entirely unpredictable Jambbas's future actions.

6

Fourth, by limiting the number of animals it can exhibit, the consent order further supports the likelihood that Jambbas will be able to properly care for the animals that it does exhibit. In short, defendants have met their burden of showing that the challenged conduct cannot be reasonably expected to recur and, in doing so, have convinced this Court that the matter before it is now moot.

    ii. The matter before the Court does not fall under the exception to mootness for actions that are capable of repetition yet evading review.

Plaintiffs contend that if the Court finds their claims moot, as it has, the case falls within the exception to mootness for actions that are capable of repetition yet evading review. This exception "applies when (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Lux v. Judd*, 651 F.3d 396, 401 (4th Cir. 2011) (quotation omitted).

However, plaintiffs mischaracterize the nature of the action that moots their claim. Plaintiffs are correct in that the challenge to license renewals would not be mooted by the expiration of a year's passage and subsequent renewal or denial of the renewal of the license. *See Kramer v. Mosbacher*, 878 F.2d 134, 136–37 (4th Cir. 1989) (challenge to yearly catch limits was not mooted by the conclusion of the fishing year because the yearly reevaluation of catch limits presented circumstances which were too short to be fully litigated prior to their cessation or expiration). This is not the case here. What has rendered plaintiffs' claims moot is the consent order entered in the administrative action brought by the USDA against Jambbas. Indeed, this case has progressed for several years without a mootness problem up until the present time. The entry of a consent order in this discreet instance does not mean that the USDA's policy of

7

rubberstamping license renewals under the AWA is capable of repetition yet evading review. Instead it means that this case can no longer be the vehicle for such a challenge as the immediate goals of plaintiffs have been achieved here. Jambbas's license has been suspended and it cannot reactivate the license until it has demonstrated, through inspection, that it is in compliance with the AWA. Further its ability to keep certain types of animals has been eliminated and the overall number of animals it can exhibit, and therefore must care for, has been reduced. As explained *supra* Part I.B.i, there is not a reasonable expectation that the complaining party will be subject to the same action again as applied to the license renewal of Jambbas.

Accordingly, this case does not fall under the mootness exception and this Court lacks jurisdiction to consider the merits. Therefore the Court must grant defendants' motion for summary judgment and dismiss the case without reaching the merits of plaintiffs' claims.

II.  MOTION FOR LEAVE TO FILE SURREPLY.

As the Court has not reached the merits of this action and plaintiffs' proposed surreply addresses the merits determination of another district court, this Court has no need to consider the surreply in its decision. Accordingly plaintiffs' motion for leave to file surreply is denied as moot.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED and plaintiffs' motion for summary judgment is DENIED. The matter before the Court is MOOT and the Court lacks jurisdiction to consider the merits of this action. Accordingly, this matter is DISMISSED AS MOOT. Plaintiffs' motion for leave to file surreply is DENIED AS MOOT. The Clerk is directed to enter judgment accordingly and to close the file.

SO ORDERED.

This the 23 day of July, 2014.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE